CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 1 2 2009

JOHN F. CORCORAN, CLERK
BY: /s/ Bright
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MOHAMMED SERDAH, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:08cv00323 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| JUDY WILLIAMS SERDAH, et al., | ) | |
|     Defendants | ) | By: Samuel G. Wilson |
| | ) | United States District Judge |

Plaintiff Mohammed Serdah ("Serdah") asserts claims against defendants Judy Williams Serdah, his former wife; Linda Oliver, his former wife's mother; Susan Goad, a senior social worker who investigated a protective service complaint for child neglect against him; Chastity McMillion, a social worker who previously conducted a custody assessment evaluation; and Dr. Betty McCrary, the Director of the Roanoke County Department of Social Services. Serdah asserts constitutional claims pursuant to 42 U.S.C. § 1983 based on the Fourth Amendment and the due process and equal protection clauses, federal civil rights claims based on 42 U.S.C. §§ 1981, 1985, and 1986, with jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1334, and a state-law claim for intentional infliction of emotional distress with jurisdiction pursuant to 28 U.S.C. § 1367. Defendants have moved for summary judgment. The Court concludes that Serdah has failed to raise a triable issue of fact as to any claim and accordingly grants summary judgment for all Defendants.

I.

Mohammed Serdah and his former wife Judy Serdah have been divorced since 2006. They have one child, a son, who is approximately seven years old. In March 2007 the Roanoke

County Juvenile and Domestic Relations Court ordered the Roanoke County Department of Social Services ("Social Services") to conduct a custody assessment evaluation. Social Services assigned McMillion to conduct the evaluation, and McMillion submitted a confidential report to the Domestic Relations Court summarizing her investigation, and that court held a custody hearing in July of 2007. Goad and McCrary had no involvement in McMillion's investigation. At the relevant time, the parties had joint physical and legal custody of the child, with Judy Serdah having primary physical custody during the schoolyear.

On March 8, 2008 a private investigator retained by Judy Serdah called the police to Serdah's apartment for a "well-being check." When they arrived, they discovered the apartment door open and Serdah's seven-year-old son and another young boy inside without supervision. The police called Judy Serdah, who arrived at the scene and took custody of her son, and placed the other child in the custody of Social Services until they could contact his parents. The Roanoke County Police Department filed a protective service complaint with Social Services that Serdah had left his seven-year-old son and another young child at his apartment unsupervised from 12:40 a.m. until 2:20 a.m., and Social Services assigned Susan Goad to investigate the incident. Though Goad communicated with Judy Serdah regarding the incident, McMillion and McCrary had no involvement in Goad's investigation, and Goad had no contact with Linda Oliver, Judy Serdah's mother.[1]

---

[1] From March 8, 2008 to June 7, 2008, Judy Serdah refused to allow Serdah to visit or telephone the child because, as she stated, "[t]here was an agreement with Social Services that there would be no visitation until the investigation was concluded." Serdah pursued a Motion for Show Cause and the Roanoke County Juvenile and Domestic Relations Court held a hearing on the matter on June 5, 2008. On June 19, 2008, the court entered another order reducing his visitation and barring overnight visits. Serdah filed a Motion to Amend or Review this order in the Juvenile and Domestic Relations Court. He stated at the hearing on this Motion for Summary

Goad interviewed Serdah in the presence of his legal counsel, and Serdah admitted that he left the two children unsupervised in his apartment in the early morning hours of March 8, 2008, although he could not recall whether he had locked the door before leaving. On April 23, 2008, Social Services informed Serdah by letter of its conclusion that the protective services complaint was "founded for Level 2 physical neglect" of the children, indicating that Social Services had determined that "the abuse/neglect resulted in, or was likely to result in moderate harm." The letter informed Serdah that, as a result of the finding, his name would be reported to the Central Registry for Child Protective Services and remain listed there for seven years. It also informed him of his right to seek an amendment of the record if he disagreed with the finding by appealing within thirty days, but no later than May 23, 2008. Serdah did not appeal within thirty days but instead filed this action in this Court on May 14, 2008.[2]

## II.

The Roanoke County Social Services defendants (Goad, McMillion, and McCrary) have moved for summary judgment on the grounds that they have qualified immunity and that they did not violate Serdah's federally protected rights or engage in conduct actionable as intentional infliction of emotional distress. The court agrees that Serdah has not marshaled evidence that the Social Services defendants violated a federal right, and therefore does not consider whether defendants have immunity. The Court also agrees that Serdah has marshaled no evidence that

---

Judgment that he now enjoys full visitation rights with his son.

[2] Serdah also filed a petition for writ of habeas corpus in this court on October 24, 2008, Serdah v. Roanoke County Dep't of Soc. Servs., 7:08 CV 00561, which this Court dismissed on October 28, 2008 because the court concluded that Serdah could not satisfy the in custody requirement of 28 U.S.C. § 2254. In a memorandum opinion and order entered on January 6, 2009, the court denied Serdah's Motion for Reconsideration.

these defendants engaged in conduct actionable as intentional infliction of emotional distress.[3]

**A.**

Serdah's federal civil rights claims based on 28 U.S.C. §§ 1981, 1985, and 1986 are based on his allegation that the Social Services defendants discriminated against him on account of his national origin, race, and religion. In their affidavits, Goad and McMillion have unequivocally denied Serdah's allegation that his national origin, religion, or race played a role in their investigations and findings, and McCrary has denied having any involvement in their investigations whatsoever.

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, admissions, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In summary judgment proceedings, the moving party need not produce evidence showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Rather, summary judgment is proper when the moving party shows simply "an absence of evidence to support the nonmoving party's case." Id. Since Serdah has mustered nothing to support his allegations, the court grants summary judgment for the Social Services defendants on Serdah's federal civil rights claims.

---

[3] McMillion and Goad also maintain that they have absolute immunity to the extent that Serdah contends that they are liable for the act of making their respective reports and recommendations. See Vosburg v. Dep't of Soc. Servs., 884 F.2d 133, 136-37 (4th Cir. 1989). Because Serdah is unable to marshal evidence that defendants violated his constitutionally protected rights, the court does not consider the issue.

4

**B.**

Serdah also claims that the three Social Services defendants denied him procedural due process in both the 2007 custody assessment evaluation and the 2008 investigation, but has marshaled no evidence to support the claim. Defendants assert he has received adequate process under Va. Code. Ann. §§ 16.1-296 and 2.2-4000-4033. We agree.

McMillion's sole involvement in Serdah's case was to conduct and submit the custody assessment evaluation ordered by the Juvenile and Domestic Relations Court in March 2007. That court, and the courts above it, were uniquely positioned to provide all the process Serdah was due in relation to the evaluation. Nothing suggests that Serdah was denied procedural due process, see Weller v. Dep't of Soc. Servs., 901 F.2d 387, 393 (4th Cir. 1990) ("Due process does not mandate a prior hearing in cases where emergency action may be needed to protect a child."), or, more fundamentally, that McMillion was in any manner responsible for denying Serdah due process.

Social Services assigned Goad to investigate the protective service complaint filed by the Roanoke County Police Department involving the March 8, 2008 incident. Goad interviewed Serdah in the presence of his legal counsel, and Serdah admitted that he had left the two young children unsupervised in his apartment in the early morning hours of March 8, 2008. Social Services informed Serdah that it concluded that the protective services complaint was "founded for Level 2 physical neglect" of the children, indicating that Social Services had determined that "the abuse/neglect resulted in, or was likely to result in moderate harm." Social Services informed him that, as a result of the finding, his name would be reported to the Central Registry for Child Protective Services and remain listed there for seven years. Social Services also

5

informed him that, if he disagreed with the finding, he could appeal within thirty days, but no later than May 23, 2008. Serdah did not avail himself of his right to appeal but instead filed this lawsuit.[4] Under the circumstances, Serdah had notice and a meaningful opportunity to be heard, the essential ingredients of procedural due process. Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971) ("Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential"). Because Serdah had notice and a meaningful opportunity to be heard concerning the founding of the protective services complaint, the court enters summary judgment for the Social Services defendants on Serdah's procedural due process claim based on the "founding" of that complaint.[5]

## C.

Though he currently enjoys full visitation rights, Serdah asserts that Goad and McMillion violated his substantive due process rights by depriving him of his liberty interest in consistent companionship with his son when he was not permitted to visit and telephone his son between the March 8, 2008 incident and June 7, 2008. To support the claim, Serdah points to Judy Serdah's interrogatory answers admitting that she denied Serdah visitation during that period and asserting that "[t]here was an agreement with Social Services that there would be no visitation until the investigation was concluded." The court finds Serdah cannot demonstrate a substantive

---

[4] A person contesting the "founding" of a protective services complaint has a review process available to him within the local Social Services department, the right to a de novo hearing by an impartial hearing officer, and an appeal to the Circuit Court. See Christian v. Va. Dep't of Soc. Servs. 610 S.E.2d 870, 871 (Va. Ct. App. 2005); Twyman v. Comm'r, Va. Dep't of Soc. Servs., 2008 WL 3287220 (Va. Ct. App. Aug. 12, 2008).

[5] Since Dr. McCrary was not involved in either the 2007 custody assessment evaluation or the 2008 investigation and since neither of these claims violated Serdah's rights, the court grants summary judgment as to these claims.

6

due process claim.

Substantive due process "[b]ars certain government actions regardless of the fairness of the procedures used to implement them." Daniels v. Williams, 474 U.S. 327, 331 (1986). To establish a substantive due process claim in the Fourth Circuit, the plaintiff must show that the government's conduct "shocks the conscience." Weller v. Dept. of Soc. Servs., 901 F.2d 387, 391 (4th Cir. 1990).

Social services did not take physical control or purport to have custody of the Serdahs' son. Under the circumstances, Serdah's claim distills to this: The Social Services defendants violated his substantive due process rights because they allegedly encouraged Judy Serdah to violate an existing custody order. These circumstances, however, fall far short of establishing a substantive due process violation because they do not shock the conscience. Clearly, to recognize an actionable substantive due process claim under these circumstances would be to embroil the federal courts in the day-to-day work of the Juvenile and Domestic Relations Court. Indeed, that court had exclusive, continuing jurisdiction over all custody issues[6] and heard Serdah's Motion to Show Cause on June 5, 2008, and it apparently found that Judy Serdah was not in contempt of the existing custody order. In short, Serdah has raised no viable substantive due process violation in this court and has been heard in the Juvenile and Domestic Relations Court, the appropriate venue to redress his concerns. Accordingly, the court grants summary judgment for the Social Services defendants as to Serdah's substantive due process claim.

---

[6]Under Va. Code. Ann. § 20-146.13, the court that makes the initial child custody determination retains exclusive, continuing jurisdiction over that case so long as the parties involved continue to live in Virginia. Virginia courts also enforce and alter child custody determinations made in other states when the parties reside in Virginia. Va. Code Ann. § 20-46.14.

7

Case 7:08-cv-00323-SGW-mfu    Document 66    Filed 01/12/09    Page 7 of 10    Pageid#: 515

**D.**

Serdah seeks to hold the three Social Services employees liable for an alleged Fourth Amendment violation. Serdah claims that the Roanoke County police officers who conducted the "well-being check" on March 8, 2008 entered his apartment in violation of the Fourth Amendment. According to Serdah, the officers passed along their information to Social Services, whose use of that information was unlawful because it was obtained in violation of his Fourth Amendment rights. Serdah's reasoning is flawed for several reasons. First, the Social Services defendants did not conduct the well-being check and did not conduct a search of Serdah's apartment. Second, the officers properly relayed the information they learned to Social Services. Third, even if the police officers involved violated the Fourth Amendment, nothing would have precluded Social Services from using that information in its investigation. See United States v. Calandra, 414 U.S. 338, 348 (1974) ("[T]he application of the [exclusionary] rule has been restricted to those areas where its remedial objectives are thought most efficaciously served."); County of Henrico v. Ehlers, 379 S.E.2d 457, 462 (Va. 1989) ("[T]he Fourth Amendment exclusionary rule should not be extended from criminal cases to civil cases."); Doe v. Mann, 415 F.3d 1038, 1057 (9th Cir. 2005) ("A parent at a dependency hearing cannot assert the Fourth Amendment exclusionary rule, since 'the potential harm to children in allowing them to remain in an unhealthy environment outweighs any deterrent effect which would result from suppressing evidence' unlawfully seized.")

**E.**

Serdah asserts a claim under Virginia law for intentional infliction of emotional distress. Under Virginia law, liability for this tort exists only when the conduct is "so outrageous in

8

character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Russo v. White, 400 S.E. 160, 162 (Va. 1991). The Social Services defendants' affidavits establish that they were simply carrying out their job responsibilities in investigating and preparing reports, and Serdah has marshaled no evidence whatsoever that their conduct was outrageous, extreme, atrocious or otherwise beyond all possible bounds of decency. Accordingly, the court will enter summary judgment for the defendant Social Services employees on Serdah's intentional infliction of emotional distress claim.

## III.

Serdah raises federal civil rights and constitutional claims and a state-law intentional infliction of emotional distress claim against Judy Serdah and Oliver arising out of the events of March 8, 2008 and the Serdahs' disputes concerning the custody and care of their son.

Serdah has offered nothing that even remotely suggests that his former wife and her mother acted under color of state law in the alleged Fourth Amendment violation by the Roanoke County Police Department. Accordingly, they are entitled to summary judgment on the claim.

Serdah's remaining federal claims against his former wife and her mother are based on his allegation that they are prejudiced against him on account of his national origin, religion and race, and are not raising his son as a Muslim. Although they deny his claims of prejudice, their views and conduct in domestic relations litigation are not grist for the civil rights statutes.

Finally, Serdah claims that his former wife and her mother are attempting to deprive him of the companionship of his son. True or not, this claim is non-actionable and singularly unremarkable. Stripped of any pretense or veneer, it is the flip side of every effort to obtain

9

custody. Certainly nothing makes these allegations actionable as a federal claim, and Serdah has marshaled nothing that fits it within the tort of intentional infliction of emotional distress.

Accordingly, the court will enter summary judgment for Judy Serdah and Linda Oliver on all of Serdah's claims against them.

## IV.

For the foregoing reasons, the Court will enter summary judgment for defendants.[7]

**ENTER**: This January 9, 2009.

_____
UNITED STATES DISTRICT JUDGE

---

[7] Serdah also seeks to maintain this suit as a class action pursuant to Fed. R. Civ. P. 23. He has not suggested a coherent class and, in any event, given his *pro se* status, could not adequately serve as a class representative. See Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975) ("Ability to protect the interests of the class depends in part on the quality of counsel, and we consider the competence of a layman representing himself to be clearly too limited to allow him to risk the rights of others.")

10